## T. R. LTD. t/a Raley's Emergency Road Service *v.* TED LEE

[No. 1760, September Term, 1982.]

*Decided October 6, 1983.*

630

The cause was argued before MOYLAN, ADKINS and BLOOM, JJ.

*Frank J. Emig,* with whom were *Dunn & Emig, P.A.,* on the brief, for appellant.

*Gary Gasparovic,* with whom was *John D. Hungerford* on the brief, for appellee.

BLOOM, J., delivered the opinion of the Court.

On October 29, 1980, a stolen tractor-trailer carrying 35 pound containers of egg yolks ran off a ramp connecting two interstate highways located in Prince George's County, in which it was traveling, and overturned within the cloverleaf surrounded by the ramp. A Maryland State Police officer, observing that curious passersby were causing further accidents, directed the appellant, T. R. Ltd., trading as Raley's Emergency Road Service, to unload, right, tow and store the vehicle. Robert & Oaks, a trucking concern which leased the truck from appellee, was immediately notified of the towing and storage; but Ted Lee, appellee, owner and lessor, may not have been apprised until as late as November 25, 1980. On that date, agents of Ted Lee made a demand for the return of the tractor-trailer. Raley's refused such demand until all assessed towing and storage charges were paid and refused the request of Ted Lee's agents for a copy of the bill until the bill, orally estimated at $4,440.00 at that point, was paid.

Appellee, unwilling to pay what was thought to be unreasonable towing and storage charges, repeatedly demanded the return of the vehicle and, on March 27, 1981, filed the first of two replevin actions. Appellant filed suit in the Circuit Court for Prince George's County, causing the tractor-trailer to be seized upon a writ of attachment on original process. Appellee subsequently voluntarily

dismissed his replevin action and, on July 16, 1981, posted a bond to dissolve the writ of attachment and to cover the storage and towing claim.

Notwithstanding the posting of the bond, appellant, of the opinion that it had acquired a lien on the tractor-trailer either by virtue of Md. Com. Law Code Ann. § 7-307 or by virtue of Section 26-160 of the Prince George's County Code, refused to release possession to the owner until the amount of the lien was tendered.[1] The trial court, while opining that any recovery for storage charges should be limited to the reasonable rate of $15 per day through July 16, nevertheless concluded that there was no legal basis for appellant to recover for unloading, righting, towing and storing the vehicle. We disagree.

While there appears to be no statewide provision, Section 26-160 of the Prince George's County Code, in conjunction with Md. Ann. Code Art. 88B, § 4, provides the following statutory authorization for appellant to recover for its towing and storage services:

> Sec. 26-160. Removal and impounding of unattended vehicles.
>
> If any motor vehicle is left unattended upon any public road, highway, alley or parking lot of the County in violation of any law, ordinance or order regarding the parking of motor vehicles, or if any motor vehicle is left unattended upon any road, highway, alley or parking lot for an unreasonable length of time so as to impede the movement of traffic or constitute a threat to public safety, the County Police Department shall have authority to impound and remove such motor vehicle and charge the owner thereof the costs of towing, storage and any other charges incurred in connection therewith.

---

1. In fact, it was not until October 12, 1981, after demands were made by Ford Motor Credit Company, a lienholder, that the tractor was released and November 25, 1981, after a writ of replevin was issued, that the trailer was released.

There having been no violation of any law, ordinance or order regarding the parking of motor vehicles, this case clearly falls within the second prong, that is, a motor vehicle left unattended for an unreasonable length of time and impeding traffic flow or constituting a threat to public safety.

The vehicle owner argues here, as he did successfully below, that this provision is inapplicable for four reasons:

1. The vehicle was not left unattended;

2. The vehicle was not left on a public road, highway, alley or parking lot *of the County.*

3. The vehicle was not left for an unreasonable length of time before it was ordered towed; and

4. The authority to tow and impose costs on the owner does not extend to state police officers.

With respect to the first argument, there can be no question that a stolen tractor-trailer whose driver has been or is about to be taken to a hospital after being involved in an accident is "unattended" for the purpose of § 26-160. The driver was not capable, physically or legally, of driving the tractor-trailer away himself. The true owners were not present or known. The tractor-trailer was unattended in every sense of the word. As to the length of time the "vehicle" so remained unattended, we think that in proper circumstances, such as the instant case, an "unreasonable" period of time might be very short indeed.

As for the argument that the power conferred by § 26-160 is limited to county officers, Md. Ann. Code Art. 88B, § 4, is dispositive:

§ 4. Powers of police employees.

(a) Generally. — The Superintendent, the deputy superintendent, and employees designated by the Superintendent as police employees shall have throughout the State the same powers, privileges, immunities, and defenses as sheriffs, constables, police officers, and other peace officers possessed at common law *and may now or hereafter exercise*

within their respective jurisdictions. Any warrant of arrest may be executed by a police employee in any part of the State without further endorsement. (emphasis supplied).

Appellee misconstrues the statutory language which, while not a model of legislative draftmanship, is clearly intended to confer upon state police officers not only those powers possessed by county police officers at common law but also any additional powers subsequently conferred upon such officers by statutes and ordinances.

Lastly, appellee asserts that because the vehicle was towed from the cloverleaf encompassed by two interstate highways it was not towed from a "public road, highway, alley or parking lot of the County." Assuming even that a highway "of the County" means a highway belonging to the county rather than one located in the county, the words "of the County" do not appear in the applicable second prong of § 26-160. We cannot presume that the omission was an oversight, especially in light of what we deem to be at least one logical reason for the distinction. It might well be that with respect to the first circumstance of a vehicle left unattended upon a County highway in violation of a parking law or regulation § 26-160 is protective of county property rights, whereas with respect to the second circumstance of an unattended vehicle impeding traffic, the ordinance is concerned with public safety. In any event, the distinction is there; and, for purposes of establishing a debt for a vehicle towed without the owner's consent, it is not necessary that the vehicle be towed from a roadway "of the County."

We conclude that a debt in the amount of reasonable towing and storage charges was incurred by appellee, under authority of § 26-160 of the Prince George's County Code and Md. Ann. Code Art. 88B, § 4, when the state police officer, upon determining that an unattended motor vehicle[2] impeded the safe flow of traffic, impounded the vehicle

---

**2.** One issue not addressed by either party is the applicability of § 26-160 to the trailer portion or the tractor-trailer in light of the definition, in both the Commercial Law and Transportation Articles of the Maryland Code, of a "motor vehicle" as a vehicle which is "self-propelled."

by ordering appellant to remove and store it without first obtaining the consent of the owner.

Having determined that by virtue of § 26-160 appellee was indebted for towing and storage charges, we now turn to the issue of the extent of that indebtedness. The trial court made factual determinations as to reasonable charges for unloading, righting and towing the vehicle as well as reasonable per diem charges for storage. We see no reason to disturb those findings, but it is necessary to determine the length of time for which appellant is entitled to demand storage charges.

In the absence of some common law or statutory lien authorizing it to retain possession of the property until its charges were paid, appellant was obliged to restore the property to its owner when demand was made for its return on November 25, 1980, and there was no right to charge for storage of the property beyond that date.

It is clear that appellant had no common law possessory lien, which has been "defined as the right 'in one man to retain that which is in his possession belonging to another till certain demands of him the person in possession are satisfied.'" Brown, *The Law of Personal Property,* § 107 (2nd ed. 1955). (footnote omitted). The basis of such a lien is an agreement, express or implied, between the parties. "Possessory liens are fundamentally consensual in nature and arise from some agreement, either express or implied, between the owner of goods and his bailee who renders some service with respect to those goods." *Younger v. Plunkett,* 395 F.Supp. 702, 707 (E.D. Pa. 1975). In *Younger,* plaintiffs' vehicles had been illegally parked and consequently towed away at the direction of the police. Defendant towing companies asserted the right to possessory liens on the vehicles

---

The Court of Appeals, in Patapsco Trailer v. Eastern Freight, 271 Md. 558, 563 (1974), *in dictum,* stated that, for the purposes of a statutory garageman's lien on motor vehicles, a trailer not attached to a tractor was not subject to such lien. We do not think, however, that the intent of § 26-160 would be much served by such a restrictive definition of the word "motor vehicle" as there used. In any event, the question, not having been argued or briefed, is not properly before us.

in order to secure payment of the towing charges. The court rejected defendants' argument.

> No exception to the assent requirement in the creation of possessory liens is recognized at common law under circumstances alleged in the present case, and no such exception has been construed as arising by implication from the authority of a police officer to remove a disabled automobile from a public way or the right of a property owner to remove a vehicle left on his property without his consent.

*Id.* at 711. (footnote omitted).

*See also, Wilkinson v. Townsend,* 96 Ga. App. 179, 99 S.E.2d 539 (1957); *Stephens v. Millirons Garage, Inc.,* 109 Ga. App. 832, 137 S.E.2d 563 (1964); *Lewis v. Best-By-Test Garage,* 200 Iowa 1051, 205 N.W. 983 (1925); *Burns Motor Co. v. Briggs,* 27 Ohio App. 80, 160 N.E. 728 (1928); *Rickenberg v. Capitol Garage,* 68 Utah 30, 249 P. 121 (1926).

In the case at bar, no such agreement, express or implied, existed. The debt for towing and storage charges arose not out of contract but by operation of law. Thus, no common law possessory lien existed.

Certainly, § 26-160 did not create or purport to create any lien as security for debts arising thereunder. There is no mention of a lien, and none can be implied from the mere establishment of a monetary obligation on the owner of a vehicle. Consent being an important element of a common law lien, any statutory attempt to create such lien without the element of consent would have to be strictly construed as in derogation of the common law. *Patapsco Trailer v. Eastern Freight, supra* note 2, at 564; *Wilkinson v. Townsend, supra,* 99 S.E.2d at 540, 541. If such a remedy is to be imposed, it is "a matter for ultimate correction by the legislature rather than by the judiciary." *Younger v. Plunkett, supra,* at 715.

We note that Title 16 of Md. Com. Law Code Ann. (1975) does create various statutory liens on personal property. Under § 16-202, any person who, with the consent of the

owner, has custody of a motor vehicle and who, at the request of the owner, provides a service to or materials for the motor vehicle has a lien on the vehicle for any charges incurred for repairs, rebuilding, storage, tires, parts or accessories. "Owner" is defined as including "a person lawfully in possession"; "person" includes "the State, any county, municipal corporation or other political subdivision of the State or any of its units." § 16-101.

The provision in § 26-160 of the Prince George's County Code for removal of unattended vehicles authorizes the police officer to "impound" and remove the vehicle. Appellee's tractor-trailer was impounded when the trooper ordered appellant to tow it away. But "impound" means merely to take into custody, and "custody is not the same as "possession," which implies proprietary rights in addition to custody. *Black's Law Dictionary* 347, 681, 1047 (5th ed. 1979); *Ballentine's Law Dictionary* 300, 593, 964-65 (3ed. 1969); *see also,* Brown, *supra,* Special Note on Possession; Holmes, *The Common Law* 206-46 (1881). The trooper (or Prince George's County under whose authority he impounded appellee's property) had custody pursuant to impoundment but not the possession equivalent to ownership that is required to confer a mechanics' lien under Md. Com. Law Ann. Code § 16-202 (1975).

Appellant raises the possibility of a statutory carrier's lien. *See* Md. Com. Law Code Ann. § 7-307 (1975). It appears, however, that the tractor-trailer was not covered by a bill of lading, as is required to establish a carrier's lien. Bills submitted to the owner for towing and storage costs to date cannot, we think, be considered bills of lading; there is no evidence that the bills dated at least six weeks after the vehicle was towed purported to be an acknowledgement of receipt of the vehicle, a contract of carriage, or a document of title. *See Younger v. Plunkett, supra,* at 712-14.

Appellant's claim against appellee by virtue of § 26-160, therefore, is limited to the reasonable charges for unloading, righting and towing the tractor-trailer and storing it until November 25, 1980.

A question was raised as to the effect of actual promises allegedly made by appellee to appellant to pay "reasonable charges" made at some point in time after the services were performed. Appellant concedes that it would not be entitled to storage charges beyond November 25, 1980, on that theory; thus, in view of our decision on the obligation created by § 26-160, we need not address this question.

Since we shall remand this case to the Circuit Court, we should, perhaps, address the issue as to the effect of the writ of attachment and appellant's control of the property during the existence of that writ. When appellant caused a writ of attachment to be issued and the sheriff attached appellee's vehicle, he left it in the physical control of the appellant; and it was thereafter lawfully in the sheriff's custody and appellant's physical control on behalf of the sheriff until July 16, 1981, when the writ of attachment was dissolved by appellee's posting of a bond pursuant to Md. Rule G57.

Normally, storage charges incurred by the sheriff in conserving property which is under a writ of attachment are repayable out of the proceeds of sale. 43 Op. Att'y Gen. 290, 292 (1958); *Groh v. Kim,* 263 Md. 140, 145 (1971); 61 Op. Att'y Gen. 763, 768 (1976). Likewise, when the goods are in *custodia legis* but are in the physical control of a third party, the third party may recover storage charges. *Groh v. Kim, supra,* at 144-45. Thus, reasonable per diem storage charges from the date of the attachment to July 16, 1981, may be allowed as costs. Whether such costs should be awarded under the facts and circumstances of this case would be entirely within the sound discretion of the trial court.

Since the court below made factual findings as to what constituted reasonable charges for the unloading, righting and towing and a reasonable per diem charge for storage, we shall remand for entry of a judgment in favor of appellant in

an appropriate amount consistent with those findings and this opinion.

> *Judgment reversed and remanded for entry of a judgment not inconsistent with this opinion. Costs to be paid by appellee.*