(724 P.2d 687)

No. 57,724

HARTFORD INSURANCE COMPANY, *Appellant,* v. OVERLAND BODY TOW, INC., and GORDON GAULT, *Appellees.*

Opinion filed July 11, 1986.

*Paul Hasty, Jr.* and *Michael J. Dutton,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellant.

*Ronald P. Wood,* of Gates & Clyde, Chartered, of Overland Park, for appellees.

Before BRAZIL, P.J., MEYER, J., and DONALD L. WHITE, Associate District Judge, assigned.

WHITE, J.: Hartford Insurance Company appeals an order of the district court granting Overland Body Tow, Inc., a lien for storage and towing charges incurred on a motor vehicle owned by Hartford.

On September 23, 1982, an automobile was stolen from a dealer's lot in New Mexico. The dealer's insurance company, Hartford (appellant), paid the dealer for the car and received title to it.

On December 27, 1982, a Leawood, Kansas, police officer observed the stolen automobile make an illegal U-turn on one of Leawood's streets. After being notified there was an outstanding warrant in Louisiana for the driver on fraudulent checks, the driver was arrested. Since another driver was not available, the officer ordered the car towed. The appellee, Overland Body Tow, Inc., towed the car to its tow lot. Neither the officer nor the appellee were aware that the car was stolen.

The loss of the car had been reported to the local police department in New Mexico, and also to the National Auto Theft

Bureau, a nationwide organization set up to assist in locating and recovering stolen automobiles. The record suggests the vehicle identification number may have been incorrectly reported. Appellee tried to determine ownership of the vehicle, but was unsuccessful.

Upon discovering the owner in 1984, appellee immediately notified appellant it had the car in storage, and later sent appellant a notice stating that the car would be sold at auction if it failed to pay the towing and storage charges.

Appellant brought action in replevin for the car against the appellee, who had towed and stored the vehicle at the request of a police officer. The trial court held that K.S.A. 58-201 gave appellee a lien upon the car in the amount of $2,667.00 (a towing fee of $27.00 and the storage cost of $4.00 per day for 660 days).

The issue in this case is whether a lien may be had under K.S.A. 58-201 for the towing and storage of a motor vehicle when a police officer requests the removal of it from the streets without the owner's request or consent. We believe it cannot. K.S.A. 58-201 provides, in relevant part:

"Whenever any person *at, or with the owner's request or consent* shall perform work, make repairs or improvements on any goods, personal property, chattels, horses, mules, wagons, buggies, automobiles, trucks, trailers, locomotives, railroad rolling stock, barges, aircraft, equipment of all kinds, including but not limited to construction equipment, vehicles of all kinds, and farm implements of whatsoever kind, a first and prior lien on said personal property is hereby created in favor of such person performing such work or making such repairs or improvements and said lien shall amount to the full amount and reasonable value of the services performed, and shall include the reasonable value of all material used in the performance of such services." (Emphasis added.)

In the present case, the owner, appellant, did not request or consent to the car being towed and stored. Absent a request or consent, K.S.A. 58-201 does not give rise to an artisan's lien. See *United States Fidelity & Guaranty Co. v. Marshall*, 4 Kan. App. 2d 9, 10, 601 P.2d 1169 (1979). See also *Olson v. Orr*, 94 Kan. 38, 40, 145 Pac. 900 (1915).

Appellee contends that K.S.A. 8-1570 acts in conjunction with K.S.A. 58-201 and thereby allows a police officer to give consent on behalf of the owner. K.S.A. 8-1570 provides, in relevant part:

"(c) Any police officer is hereby authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when:

. . . .

"(2) The person or persons in charge of such vehicle are unable to provide for its custody or removal; or

"(3) When the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a judge of the district court without unnecessary delay."

"A primary rule for the construction of a statute is to find the legislative intent from the language, and where the language used is plain and unambiguous and also appropriate to an obvious purpose, the court should follow the intent as expressed by the words used. [Citations omitted.]" *Sampson v. Rumsey*, 1 Kan. App. 2d 191, 193, 563 P.2d 506 (1977).

The plain language of K.S.A. 58-201 specifically requires an *owner's* consent or request that work or improvements should be undertaken. Had the legislature intended that a third party be authorized to give consent under K.S.A. 58-201, it could have easily so stated. Neither K.S.A. 58-201 nor K.S.A. 8-1102 make any reference to each other nor is there a specific statute by which an owner is deemed to have given consent for purposes of K.S.A. 58-201, as compared to K.S.A. 1985 Supp. 8-1001, the implied consent statute relating to the revocation of a driver's license for refusing to submit to a blood alcohol test.

At least two states have held that police officers do not act as agents of the owner nor do they otherwise have authority to hold the owner responsible for towing and storage charges. See *Thompson v. Danvir Corporation*, 264 A.2d 361, 363 (Del. Super. 1970); *Stephens v. Millirons Garage, Inc.*, 109 Ga. App. 832, 833-34, 137 S.E.2d 563 (1964). While these cases are not controlling, they are persuasive.

An Oklahoma Supreme Court opinion presents a similar factual pattern in a different statutory context. In *Moral Insurance Company v. Cooksey*, 285 P.2d 223 (Okla. 1955), a car, which was insured by Moral Insurance Company (Moral), was stolen in Sulphur, Oklahoma. The car was driven to Ada, Oklahoma, where it was subsequently abandoned. The Ada police found the car and directed Cooksey to tow the car and store it in his garage. Approximately five months later, Moral located the car in the Cooksey garage and demanded possession. Cooksey refused to relinquish possession of the car until Moral paid Cooksey's claim for towing and storage charges. Moral claimed that Cooksey did not possess a lien on the vehicle.

In holding that Cooksey held a lien on the car, the Oklahoma court based its decision on an Oklahoma lien statute which

expressly provided for a lien for services rendered in the protection or safekeeping of articles.

"In statute, 42 O.S.1951 § 6, it is stated:
'A lien is created:
1. By contract of the parties; or,
2. By operation of law.'
42 O.S.1951 § 91 provides:
'Every person who, while lawfully in possession of an article of personal property, *renders any service* to the owner thereof by labor or *skill employed for the protection*, improvement, *safekeeping* or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due to him from the owner for such service.' " (Emphasis added.) *Moral Insurance Company v. Cooksey*, 285 P.2d at 225-26.

The Oklahoma court also noted that, under its statutes, Cooksey became a bailee for hire and was entitled to compensation for expenses incurred in the preservation of the car.

"In 15 O.S.1951 § 511, 514, it is provided:
'One who finds a thing lost is not bound to take charge of it; but if he does so, he is thenceforward a bailee for the owner, with the rights and obligations of a bailee for hire.

. . . .

'The finder of a thing is entitled to compensation for all expenses necessarily incurred by him in its preservation, and for any other service necessarily performed by him about it, and to a reasonable reward for keeping it.' " *Moral Insurance Company v. Cooksey*, 285 P.2d at 226.

In the present case, however, the Kansas lien statute, K.S.A. 58-201, does not provide for a lien for "protecting," "safekeeping," or "storing" articles. Had the Kansas legislature intended a lien for such service, it could have easily so provided.

It should be noted that a public agency may cause to be removed a vehicle which has been abandoned on real property and that any person removing such vehicle from the real property at the request of a public agency shall acquire a possessory lien on the vehicle for costs incurred in towing and storage. See K.S.A. 8-1102. However, the vehicle in this case should not be considered abandoned for purposes of K.S.A. 8-1102. Rather, as noted, the vehicle was towed pursuant to K.S.A. 8-1570, after the driver had been arrested.

With respect to a bailee's lien, as noted, K.S.A. 58-208 does not *create* a lien, but rather, merely provides a remedy for those who have already acquired a lien.

"A constructive bailee or bailee by operation of law, who has come into

possession of personal property of another, ordinarily receives nothing from the owner of the property, *has no right to recover from the owner for what he does in caring for the property*, and is, in effect, an uncompensated or gratuitous bailee." (Emphasis added.) 8 Am. Jur. 2d, Bailments § 25, p. 757.

"[E]xcept as to . . . common carriers, innkeepers, warehousemen, and [owners of wharves], there is no lien for simply keeping and taking care of property unless created by contract of the parties or by statute." 8 Am. Jur. 2d, Bailments § 243, p. 977.

Appellee's remedy under common law faces the same problems as its remedy under the statutory lien—there was no agreement between appellant and appellee. As it is with a statutory lien, a common-law lien can only be created by agreement with the property owner. *Alter v. Johnson*, 127 Kan. 443, 445, 273 Pac. 474 (1929); 8 Am. Jur. 2d, Bailments § 243.

"As was also the rule at common law, it is firmly established that a lien can be created only by a contract with an owner of property or someone authorized to act on his behalf, or by a statute or other fixed rule of law; and in either case, the effect is the same." 51 Am. Jur. 2d, Liens § 6, p. 147.

As we find that there was no request or consent by appellant for a statutory lien, we also find the facts show that there was no relationship between the parties to indicate any agreement between them for a common-law lien.

We conclude that Overland Body Tow, Inc., did not possess a lien on the car pursuant to K.S.A. 58-201 or under common-law principles. An owner of a motor vehicle cannot be held responsible for charges under K.S.A. 58-201 when a police officer, without consent of the owner, requests a vehicle to be towed and stored.

Having found that Overland Body Tow does not have a lien, we need not address appellant's argument that 58-201 is unconstitutional. The judgment of the trial court is reversed.